Vernon F. HARP and Vera Harp, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13442.

United States Court of Appeals
Sixth Circuit.

Feb. 11, 1959.

**140**

Robert J. Hobby, Dallas, Tex., Durant & Hobby, Dallas, Tex., on the brief, for petitioners.

James P. Turner, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief, for respondent.

Before MILLER, Circuit Judge, and JONES and THORNTON, District Judges.

JONES, District Judge.

This matter arises on a petition for review of a decision of the Tax Court upholding the determination of deficiencies by the Commissioner of Internal Revenue.

Vernon F. Harp (hereinafter called taxpayer, since his wife is a party only because joint returns were filed) was originally a plasterer by trade, but since 1938 he has been engaged in building homes and in various real estate developments. His wife has always kept the records pertaining to the construction business, using a single entry system on the cash basis; after 1948 an accountant maintained a ledger of income, purchases and expenses, rendering quarterly financial statements, computing payroll taxes, and preparing income tax returns including the returns for 1948–1951 which are here involved.

For the years 1943–1947 the taxpayer failed to file timely returns. In 1948 he contacted an old friend, Deputy Collector Albert L. Wentz, now deceased, to help straighten out his tax situation. Wentz adopted the net worth method and prepared the returns, arriving at $75,000.00 closing net worth as of December 31, 1947. No details of the make up of the $75,000.00 net worth are in the record, of which more later.

The taxpayer's tax records for 1948–1950 were examined in early 1952 by Revenue Agent Edward S. Harrington. The testimony of Vera Harp is that Harrington did not examine all their business records, since some of them were at the accountant's office in another town a few miles away. She further testified that the agent told her not to bother filing the 1951 return because he would pick that year up in his audit.

Presumably as a result of Agent Harrington's inspection, the Commissioner first determined that taxpayer's records did not correctly reflect income and adopted the net worth method, determining deficiencies based upon an understatement of net income in the following amounts:

|      | Return | Commissioner's Determination |
|------|--------|------------------------------|
| 1948 | $ 7,339.50 | $35,199.25 |
| 1949 | 7,735.55 | 37,524.02 |
| 1950 | 9,069.92 | 30,817.08 |
| 1951 | 10,939.42 | 28,678.34 |

■ The taxpayer first asserted that the Commissioner was not entitled to use the net worth method, but offered the Tax Court no proof indicating that his records did in fact fairly reflect income. The Commissioner's determination is presumed to be correct. See 26 U.S.C. § 1141; Thomas v. Commissioner, 6 Cir., 1955, 223 F.2d 83. Since there was no evidence to overthrow this presumption, the Tax Court properly refused to set aside the net worth determination on that ground.

In addition to the determination by the Commissioner of deficiencies because of understatement of income in the years involved, penalties were assessed for failure timely to file the 1951 return [§ 291 (a)]; for failure to file an estimate in 1948, 1950 and 1951 [§ 294(d) (1) (A)]; and for substantially underestimating income for 1948, 1949, 1950 and 1951 [§ 294(d) (2)]. The Tax Court approved the determination in full.

The real problem in this case is the effect of the presumption that the Commissioner's determination is correct. In Thomas v. Commissioner, supra, [223 F. 2d 88], it is stated that:

"* * * these determinations were presumptively correct, and that the Tax Court's decisions upholding them are conclusive unless clearly erroneous. 26 U.S.C. § 1141; Rule 52 (a) Federal Rules of Civil Procedure, 28 U.S.C.A.

\* \* \* \* \* \*

"Yet, although the petitioners here had the burden of proving that the Commissioner's determinations were wrong, if they did so, it was not incumbent upon them to prove that they owed no tax, or what was the tax that they did owe. Taylor v. Commissioner, 2 Cir., 1934, 70 F.2d 619, 621, affirmed Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623.

" '[W]here it is apparent from the record that the Commissioner's determination is arbitrary and excessive, the taxpayer is not required to establish the correct amount that lawfully might be charged against him, and he is not required to pay a tax that he obviously does not owe. In proceedings before the Tax Court, as distinguished from suits for refund in the District Court, it is sufficient to show that the Commissioner's determination is invalid. Upon such a showing the case should be remanded to the Tax Court for further hearings on the point involved.' Durkee v. Commissioner, 6 Cir., 1947, 162 F.2d 184, 187, 173 A.L.R. 553."

■ In short, the Commissioner's determination is presumed correct, but if error is shown, the presumption disappears and the Commissioner then has the burden of proving the correctness of his determination, or at least the correct amount actually due. A presumption is but a heavier burden of proof, but once overcome the burden of going forward shifts with the introduction of the proofs.

The petitioner does not actually contest the findings of the Tax Court on the fact issues but strenuously contests the conclusions drawn from the facts.

The Tax Court specifically found six errors in the computation:[1]

A. Omissions from opening and closing net worth (these affect the computation but not the determination):

   1.  $10,000.00—Punch Bowl Land;
   2.   1,603.11—Well drilling and pumps;
   3.   1,500.00—Fritz Fair Land.

B. Omissions from opening net worth only (these affect the determination as well as the computation since they reduce the increase from year to year):

   1.  $7,000.00—3 apartment dwelling on Punch Bowl, treated as addition to net worth—1948;

1. The determination is the result of the computation. It is the amount due as distinguished from the figures used to make up the amount due.

2. No amount found—houses in process, treated as additions to net worth—1948.

C. Items not subtracted from net worth (these also affect both determination and computation):

1. $10,000.00—29 Harpcrest Heights lots, of which 27 were sold during the period involved, but not removed from net worth.

The omissions from opening and closing net worth in Group A, since they show no error in the final determination, are, as the Tax Court concludes, not sufficient to overcome the presumption of validity. However, they should have been included in the computation. See Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150.

With regard to the omissions from opening net worth only in Group B, the question arises whether the presumption is destroyed, for these items do affect the final result, and therefore should have been included. In both cases the Tax Court states:

"Here, the petitioners have not shown when they paid for this asset or the manner of payment—that is, whether with borrowed money giving rise to a liability offsetting in whole or in part the cost included among the assets. It is true that respondent's (Commissioner's) net worth computation shows among the liabilities at January 1, 1948, large amounts of mortgages and accounts payable, but there is no evidence whatever as to whether those liabilities relate to the item in question."

This is precisely contrary to our holding in Thomas v. Commissioner, supra. The Tax Court uses the presumption of correctness as evidence to be weighed, where it actually had been totally destroyed, as shown by the Tax Court's findings on these subjects.

The 27 lots in Group C found to have been sold were not subtracted from net worth because, to quote the Tax Court:

"Since the petitioners have failed to show how many lots they had on hand at any particular time, or the cost thereof, they have failed to establish facts which would warrant our changing the respondent's determination."

■ Here again the presumption, 'tho mortally wounded, fights on. It became the Commissioner's burden to prove that the determination was correct in spite of the error shown.

■ Another slightly different approach to this problem is through the use made of the net worth method, as set forth in Holland v. United States, supra. Although Holland v. United States is a criminal case, "we see no reason why the determination of opening net worth should be any less vital to the validity of the method of computation invoked in the one type of case than in the other." Thomas v. Commissioner, supra, 223 F.2d at page 89.

Holland v. United States, supra, requires the Government to establish opening net worth accurately and to track down all relevant leads furnished by the taxpayer. We feel that this rule was not properly applied in this case, and this resulted in error in the determination with respect to Groups B and C above.

■ It has been stated above that there was no evidence of the makeup of the $75,000.00 net worth used by Deputy Collector Wentz for the 1947 return. The taxpayer moved for production of the tax returns for 1943–1947 by the Commissioner at the hearing. When copies of these returns were introduced and examined, it appeared that the returns themselves gave no details of the adjusted gross income figure, but contained a note "See Letter Attached". There were no letters attached, which odd fact the Commissioner explained by stating that the letters were official inter-office communications from the deputy collector to his division chief and thus confidential and not subject to discovery. The Tax Court agreed.

However, one of the taxpayer's main contentions throughout this proceeding is that the Commissioner is estopped to deny the correctness of the prior determination. The Commissioner pointed out that Wentz was an old friend of the taxpayer and there was no evidence to show that he was acting in an official capacity. The Tax Court agreed. We agree that the evidence is sufficient to support this finding.

Since Wentz was acting unofficially, his letter to his division chief in relation to the computation is rather obviously also an unofficial communication and properly a part of the return. We think the letters erroneously withheld. Upon rehearing and examination of the Wentz letters which were attached to the returns, great weight should be given to the computation made by an expert in such matters such as it is presumed the deputy collector was.

As to the penalty under 26 U.S.C. § 291(a) for late filing of the 1951 return, we believe this is a factual question which could have been decided either way by the Tax Court, and although we might have reached a conclusion different from that reached by the Tax Court, we cannot say that the finding is clearly erroneous.

Since the case is to be remanded, we think it proper to express our opinion of a question not raised in the review nor mentioned in the briefs, although it is mentioned in the Tax Court's opinion. That is the double character of the penalties imposed by the Commissioner and upheld by the Tax Court under 26 U.S.C. §§ 294(d) (1) (A) and 294(d) (2) for failure to file a declaration of estimated tax and, since Treasury Regulation 111 § 29.294—1(b) (3) (i) [26 C.F.R. (1949)] treats a failure to file an estimate as if it were an estimate in the amount of zero, for substantially underestimating the tax. This court has ruled on the question recently in Acker v. Commissioner, 6 Cir., 1958, 258 F.2d 568, petition for rehearing, 258 F.2d 575 (Supreme Court granted certiorari, 79 S.Ct. 346), in which we held that a double penalty was not intended by the Congress. Accordingly, the Tax Court is directed to apply the principles of the Acker case to the facts here presented on rehearing.

In the respects noted and for the reasons stated, we think the deficiencies assessed were inconsistent with the facts and were arbitrarily and erroneously imposed. Accordingly, as to these phases of the matter the decision of the Tax Court will be reversed and the case remanded for further hearings on the points noted, and for further proceedings consistent with this opinion.