**Paul V. WEIR and Margaret G. Weir, Petitioners,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Paul V. WEIR, Petitioner,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 13882, 13883.**

United States Court of Appeals
Sixth Circuit.

Nov. 2, 1960.

Treffinger & Platt, Columbus, Ohio, on the brief), for petitioners.

Carolyn R. Just, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before McALLISTER, Chief Judge, CECIL, Circuit Judge, and BOYD, District Judge.

McALLISTER, Chief Judge.

This is an appeal from the decision of the Tax Court, in which the principal issue is as to the admissibility of evidence and the burden of proof. Appellants also raise the question of their right to certain deductions, as well as the defense of the statute of limitations. Appellants, husband and wife, will hereafter, for convenience, be referred to as petitioners, or as petitioner.

Petitioner Paul Weir was president and principal stockholder of a number of corporations during the years 1945 through 1949. During these years, numerous checks on the corporations were issued to various persons. The Commissioner found that these checks were issued for the personal benefit of the petitioner. The petitioner contended that they were issued for the benefit of the corporations, and testified that he had received no personal benefit whatever as a result of their issuance.

In preparation for the trial of the case and in order to refresh his memory, prior to the hearing, petitioner examined various records and prepared a memorandum to aid him in testifying. The memorandum showed the dates of the checks, the payees, the amounts, and the purposes for which they were issued.

It appeared that many checks were issued to third persons, and endorsed by persons other than petitioner, and his testimony that he received no personal benefit from the checks was unqualified and uncontradicted. The determination of the Commissioner set forth that the checks were "deemed" to have been for

Edmund D. Doyle, Columbus, Ohio (James H. Larva, and Porter, Stanley,

petitioner's benefit. The Tax Court ignored, or excluded, testimony by the petitioner to show the purposes for which the checks had been issued; and it, finally, found that the checks in question which had been issued by the corporations constituted taxable income to the petitioner.

Before testifying, petitioner, as above mentioned, examined various records and checks that were issued. These records which he examined to refresh his memory were either his own records, or those of other parties. After reporting the result of this examination to his attorneys, they made a list of the checks in question, with the date, number, amount of check and payee, and opposite each check was listed the nature of the articles purchased, or service rendered to the corporation, as had been determined by petitioner in his own independent examination. When, on the hearing, petitioner had this list in his hand and attempted to use it to refresh his recollection as to the purposes for which the checks had been issued, counsel for the government entered strong and emphatic objections on the ground that the list was not the best evidence. However, petitioner was not offering the list in evidence, but only using it to refresh his recollection; and this was emphasized to the court by his counsel. In such a case, the best evidence rule, of course, is not involved. The examination and investigation which petitioner had made as to the purposes for which the checks had been issued, consisted, among other matters, in calling upon payees of the checks and looking at their invoices, and in making inquiries, which served to recall for him the circumstances under which the checks had been given. As an instance, in one case, petitioner examined a duplicate invoice of a jewelry store which had received a check from one of the corporations. From the invoice, petitioner ascertained that the check had been issued in payment of two silver service sets which had been sent, as a gift, to a man in Chicago, who had been instrumental in securing for petitioner's

corporations the placement of a two and one-half million dollar loan, upon which petitioner's corporations had received a commission of twenty thousand dollars. Another check, petitioner found, had been issued to pay for a watch for a retired director and officer who had died many years before the hearing. Several other large checks had been issued in payment of furniture and fixtures for an apartment house, constructed by a subsidiary of one of the corporations in which petitioner was interested as a stockholder. All of the foregoing, and much more, was ascertained by petitioner through examining the invoices or records of the payees of the checks. By refreshing his memory in this way, petitioner was enabled to testify, of his own knowledge, that, not only had he received no benefit from the issuance of the checks in question, but that they had been issued for a valid business purpose on behalf of the corporations. It is highly credible that the president of a corporation would recollect transactions, such as the foregoing, when his memory had been refreshed by looking at such records and discussing the matters with the interested parties.

When it is realized that approximately 400 corporate checks were involved, which had been issued over a period of ten years, and that the petitioner had never been in charge of the books or accounts of the corporations, the case presented a classic example for the use of a memorandum to refresh the memory of the person testifying, who, by virtue of so refreshing his memory, actually recollected the transactions. It is not the memorandum which is the evidence, but the testimony as to the personal recollection of the witness; and a witness may refresh his recollection by looking at any document, whether made by himself or by others, and, in the same way, his memory may be refreshed by conversations with others. None of the foregoing instances would be subject to objection as being in violation of the best evidence rule, or the hearsay rule. If any objection could be envisaged, it

would go to the weight, rather than to the competency of the testimony. It was error for the Tax Court to exclude the testimony given or proffered by petitioner based upon his memorandum when such memorandum was used only to refresh or revive his recollection.

Moreover, as mentioned, petitioner testified without reservation or qualification that he had received no personal benefit as a result of the issuance and cashing of the checks which the Commissioner had charged against him as the receipt of personal income. This testimony was admitted by the Tax Court. When counsel for the Commissioner objected on the ground that whether petitioner received any personal benefit was a conclusion of law, the court ruled: "You will have to take that up on your cross-examination."

As counsel for petitioner was examining him as to various checks, and asking, with respect to each one, whether or not he had received any personal benefit from any of them, the court inquired whether it would not be possible to shorten the examination by asking petitioner from what checks he had received a personal benefit as there were fewer of such checks. Counsel acceded to the court's request, and petitioner then identified several checks issued for his benefit. Respondent introduced no evidence or testimony whatever; and the testimony of the petitioner that he had received no personal benefit from the checks in issue is uncontradicted.

The Tax Court found that all checks in question, issued to third persons, or to "cash" and endorsed by third persons, were income to petitioner. The court stated that "although the fact that the checks were not payable to or endorsed by [petitioner], in some instances might be entitled to a certain amount of weight in determining whether such checks were issued for the benefit of [petitioner], that is not so in the instant case, since by [petitioner's] admission, several of such checks were in fact issued for petitioner's personal benefit;" and that "[petitioner's] testimony with regard to

such checks did not purport to disclose any of the underlying facts necessary to be known to determine the purpose of the issuance of such checks. [Petitioner] merely denied that such checks were issued for his benefit. As such, his testimony was simply an assertion of the ultimate fact in issue for which it is offered as proof, and is not sufficient to support petitioner's burden" of overcoming the presumption arising out of Commissioner's determination.

Petitioner's testimony was that, as to the checks here in question—made out to others and endorsed by others—he received no benefit or money therefrom. This testimony is evidence that the checks, or money represented by them, did not constitute receipt of income to him. The law imposes much less of a burden upon a taxpayer who is called upon to prove a negative—that he did not receive the income which the Commissioner claims—than it imposes upon a taxpayer who is attempting to sustain a deduction on his income tax return. One reason for this is that, as petitioner points out in his brief, deductions are matters of legislative grace, and the burden of proving them and their correct amount rests upon the taxpayers, entirely aside from the consideration of any presumption of correctness that attaches to the Commissioner's determination, and that the application of the same rule to the testimony that a taxpayer did not receive income, as to a taxpayer's claim for deduction on his income tax return, would invert the ordinary rules of procedure, as Judge Learned Hand pointed out in Taylor v. Commissioner, 2 Cir., 70 F.2d 619, 621, affirmed 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623. Moreover, the ultimate fact in the instant case was whether the petitioner received income. His testimony that several of the other checks were issued for his personal benefit in no way vitiates or derogates from his testimony that he received no money or benefit from the checks here in question, contrary to the holding of the Tax Court. It was also observed by the Tax Court

that petitioner's testimony that he received no benefit from any of the checks in question was a mere self-serving declaration. With this conclusion, we do not agree. The fact that his testimony serves to prove his contention does not make it a self-serving declaration, as that term is known in the law, any more than a defendant's testimony, in a criminal case, that he did not commit the crime charged against him, is a self-serving declaration.

■ There appears to have been some confusion as to whether petitioner was testifying as to his own knowledge, refreshed by memorandum, or whether he was merely repeating what he found in documents prepared by others. In case of such doubt, the question to be addressed to the witness, under the given circumstances, would be whether, after inspecting records or inquiring from various persons, his memory was refreshed so that he could testify of his own personal recollection as to the event.

It was stated to the court by petitioner's counsel, at the beginning of the proofs, that his testimony "involved quite a number of checks, and [petitioner] was handed a schedule to review from his records what he found an explanation for. There were so many that he could not keep them all in his mind, and he has made notations, and this is to refresh his recollection from what information he has. * * * I am not tendering [the memorandum] as an exhibit." The court then inquired:

"The Court: You have here some documents which seem to be quite voluminous, and involving quite a number of individual checks listed as items.

"Counsel for Petitioner: I would say the testimony will be oral testimony.

"The Court: Several hundreds of them, and you expect to elicit testimony from this witness as to each one of them?

"Counsel for Petitioner: To explain the character, the purpose for which it was paid to these other parties and to himself, why this amount was paid.

"The Court: Where does this come from? Is it personal recollection or is there *something of record* about this?

"Counsel for Petitioner: *Some of it is personal recollection, and some is of record.*

"The Court: How will you distinguish between that which is of record?

"Counsel for Petitioner: I will ask the witness where he obtained the information."

During the course of the testimony, petitioner's counsel, in examining petitioner, stated to the court that he would ask these questions as to each check: "Where did you get this money? Did you get this money?" Whereupon the court said: "If I sustain the objection on the ground that the records are the better evidence, you will be in trouble. * * * It is taking up a tremendous amount of time to go through this item by item, but I forewarn you that that would probably be the Court's ruling if there is an objection on the ground that the records are the better evidence. * * If you wish to take up the time, I will sit here and take it up, but don't ask this Court to make an audit of these accounts. That is the job of the attorneys in this case."

We realize what onerous work it was for the court to hear evidence as to all of these items. But it does not appear to have been a duty of auditing or accounting for the lawyer to undertake. It was concerned with the testimony of the witness, as to his recollection, after refreshing his memory, with regard to what each check was given for, and whether the witness had received money or any benefit therefrom. Such testimony does not involve auditing by lawyers or auditors, or accountants; and although it required a great amount of time to go through each item, there would seem to be no other way to ascer-

tain the facts where all were contested. In the end, it would involve much less time than is always required by a review of the decision of the court. Subsequently a number of questions were asked as to other checks totalling some thousands of dollars and petitioner testified that he received no personal benefit from any of those checks. As the examination of the witness was continuing and he was testifying that he received no personal benefit from the checks in question, the court intervened to abbreviate the testimony, as follows:

"The Court: Let me ask you, * * * if it would be possible to shorten this, since I take it the same character of question will be asked. Are there fewer of the checks in which he was interested, and would it be simpler for him to point out those in which he was interested or obtained the benefit?

"Counsel for Petitioner: I can do that.

"The Court: Do you have him look at the exhibit and then read off those in which there was an interest, and point out those item numbers, point it out by item number? * * He may refer to the stipulation, if that may be done. If he knows, or if he doesn't know, if he has to go to his personal notes, I suppose we will have to do that. I am trying to find a way to shorten this."

The witness was then asked about a number of checks. He testified that certain of the checks were for his personal benefit, and that, from others, he "received no personal benefit."

After this testimony, his counsel asked:

"Q. Mr. Weir, in answer to the question, were they of your present recollection of what the matters were that you explained about, were they of your present recollection? A. Yes, those were. I have recollection of most of the items."

What petitioner seems to have done, is to have sought out the records of his companies, or the records of other persons, to ascertain what they showed with reference to these hundreds of checks over a ten-year period. In instances where he would find from such records, or from conversations with others, that a check had been given at a certain time for, say, two silver services, he could recall the fact that such silver services were purchased as gifts for parties doing business with his companies, and were a legitimate business expense, from which he received no personal benefit.

It is our view that the record sustains petitioner's contention that he was testifying from his own memory, refreshed by memoranda. The fact that he stated, on different occasions, that he was testifying, in certain instances, from information "based" upon records of the companies that issued the checks, or information he received from parties to whom the checks were given—or that the "source" of his information consisted of invoices and the like—does not, in view of his other testimony in the case, appear to us to violate the best evidence rule. The witness could still be availing himself of conversations with others and records of other companies as the "source" of his information, and yet merely be using these to refresh his memory as to the actual event. To ascertain clearly whether the testimony of the witness should have been rejected as being in violation of the best evidence rule, the witness should have been asked whether, after refreshing his memory from the records and conversations with others, he could testify, of his own recollection, as to the fact. If he could not, the testimony would be inadmissible.

In any event, after the witness clearly testified that he never received any personal benefit whatever from the checks in question, it was unnecessary for him to testify as to the purpose for which the checks had been issued. By his complete denial that he received any benefit from the checks, he overcame whatever presumption arises from the Commissioner's determination; and it is not necessary for him to go further and

affirmatively show the purpose for which the checks were actually issued, or to prove the correct amount of the tax due, in order to nullify the Commissioner's statement of deficiency. Polizzi v. Commissioner, 6 Cir., 265 F.2d 498; Thomas v. Commissioner, 6 Cir., 223 F.2d 83; Thomas v. Commissioner, 6 Cir., 266 F.2d 297; Harp v. Commissioner, 6 Cir., 263 F.2d 139; Gasper v. Commissioner, 6 Cir., 225 F.2d 284.

Moreover, it is to be noted that in this case there was no presumption whatever arising out of the correctness of the Commissioner's determination. The opinion of the Tax Court recites that the Commissioner "has conceded his determination to be erroneous with respect to some of the checks involved." This determination was erroneous for 1945, to the extent of $6,346.-14; for 1946, to the extent of $17,231.07; for 1947, to the extent of $13,862.98; for 1948, to the extent of $331.13—or an erroneous determination for the four years, in the amount of $37,771.32. Further, the Tax Court found that an additional amount of approximately $20,000 of the checks charged by the Commissioner as personal income to petitioner was not taxable to him as income. The concession of the Commissioner that his determination was erroneous in the amount of more than $37,000; the Tax Court's finding that the determination of the Commissioner was erroneous in a further amount of approximately $20,-000; and the clear and uncontradicted testimony of petitioner that he received no personal benefit as a result of the issuance of the checks in question, destroyed any presumption of correctness of the Commissioner's determination. It, therefore, became the duty of the government affirmatively to prove its case. Yet after the presumption of correctness disappeared, the government introduced no evidence whatever. The Commissioner's determination is presumed correct, "but if error is shown, the presumption disappears and the Commissioner then has the burden of proving the correctness of his determination, or at least the correct amount actually due." Harp v. Commissioner, 6 Cir., 263 F.2d 139, 141. The case must be sent back because of failure of proof on the part of the government.

Petitioner, Paul V. Weir, had, in 1949, received from one of his corporations, the Continental Mortgage Company, the sum of $39,050 in the form of checks payable to him. On the books of the Continental Mortgage Company, these sums which were paid to petitioner were carried as "accounts receivable." In the same year, petitioner paid $101,669 as a guarantor on an obligation owed by Continental Mortgage Company to a bank. Petitioner thereby became subrogated to the claim of the creditor bank against Continental. Accordingly, at the end of the year 1949, petitioner owed Continental $39,050, the amount of the checks paid to him by Continental; and Continental owed petitioner $101,669. The Tax Court found that the "debt owed [petitioner] by Continental as a result of his satisfying its obligation to the bank became entirely worthless in 1949," and was deductible by petitioner as a non-business bad debt. A non-business bad debt would, according to the statute, entitle petitioner to a capital loss deduction against ordinary income of only $1,000. The government emphasizes that, in the Tax Court, there was no contention made that the debt which petitioner paid on behalf of Continental should be set off against the amount of money paid by Continental to petitioner, and that the only question there litigated was whether it was deductible as a business or non-business bad debt.

It is true that petitioner took the position at the hearing before the Tax Court that he was entitled to a business bad-debt deduction, which would have been a deduction in the full amount of the loss he had sustained in 1949 by reason of having discharged Continental's liability to the bank. Having, as he thought, a business bad-debt deduction, he was of the opinion that he was entitled to set off the debt in the amount of $101,669 against the amount of $39,-

050, which had been previously paid to him by Continental and had been charged against him as additional income. Since, as petitioner concluded, the ordinary loss arising from the bad debt exceeded the amount of $39,050 which the Commissioner asserted petitioner had not repaid to Continental, it seemed unimportant to petitioner to determine whether, by his payment for Continental, he had actually repaid its advance to him of $39,050. Some weeks before the hearing before the Tax Court, the Supreme Court held that the loss sustained by a guarantor in paying a corporate debtor's obligation was a non-business bad debt, and, therefore, a capital loss deduction, deductible against ordinary income only to the extent of $1,000. Putnam v. Commissioner, 352 U.S. 82, 77 S.Ct. 175, 1 L.Ed.2d 144. Petitioner argued before the Tax Court that the Putnam decision did not apply to the deductibility of business bad debts which were deductible in full under Section 23(k) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(k) (1); and that, since petitioner was in the business of promoting and financing corporations, he was entitled to a full deduction for his loss. The Tax Court found, however, that petitioner did not come within the above provision of the statute for the reason that he was not "a dealer in enterprises," and that, therefore, he was limited to a capital loss deduction. If the Tax Court found that petitioner was a "dealer in enterprises," he would not now be here on the question of repayment of the monies advanced to him by Continental. It was not until the opinion of the Tax Court on this issue that it became necessary for petitioner to secure a determination as to whether he had, as a result of the advance of $39,050, received income, which he had repaid by paying the debt of Continental to the bank.

■ Under these circumstances, it appears to us that, whatever the theory originally advanced by petitioner on the hearing, the question of allowance of the offset of $101,669 paid by petitioner for Continental's debt, against the $39,050

advanced to petitioner by Continental, should properly have been considered by the Tax Court on petitioner's motion for reconsideration and retrial, before entry of decision, as bearing upon the question of petitioner's receipt of income; and findings should be made as to receipt of income on the part of petitioner by reason of Continental's advances of money to him, and whether repayment was made therefor by virtue of petitioner's payment of Continental's debt to the bank. Because the case must be remanded with regard to another issue, as heretofore mentioned, the issue whether petitioner repaid the $39,050 by his liquidation of Continental's debt to the bank, is properly determinable on remand and a new hearing before the Tax Court.

Moreover, it appears to us that petitioner should have been permitted to amend his petition after the conclusion of the hearing, but before entry of the decision, in order to set up the defense of the statute of limitations for the taxable years of 1945 and 1946 on the ground that any assessment of additional tax for these years was barred, in the absence of fraud—and in view of the finding of the Tax Court that there was no fraud. Miller v. Commissioner, 5 Cir., 237 F.2d 830, 834, 835; Alameda Park Co. v. Lucas, 59 App.D.C. 175, 37 F.2d 805. The government contends that the foregoing cases do not apply since there the courts found that the facts appearing on the record disclosed prima facie a defense of the statute of limitations; and it was held that the exercise of judicial discretion required an amendment to make the pleadings conform to the facts. In the instant case, petitioner submits that the income tax returns in question for 1946 and 1947 must have been timely filed on or before the date of March 15 of those years, since otherwise the Commissioner would have asserted a deficiency penalty which he was, by statute, required to assert, in the case of filings of returns subsequent to the dates above mentioned. Accordingly, we must assume the income tax returns to have been timely filed; and, if they were,

the statute of limitations would be a defense. "It would be a harsh rule that would deny to a taxpayer the right to plead the statute of limitations otherwise available to him unless there was such a complete failure to comply with the statute that the Government's interests were in some way jeopardized." Miller v. Commissioner, supra, 237 F.2d at page 835. On remand, petitioner should be allowed to amend his petition in order to plead the statute of limitations as to the income tax returns for 1946 and 1947.

■ Whether, in computing petitioner's capital gain, taxes paid on the sale of real estate owned by petitioner should be held deductible, as taxes, under Section 23(c) (1) of the Internal Revenue Code of 1939, was a question not raised by petitioner on the hearing before the Tax Court. He had claimed that the taxes so paid were deductible as an expense of the sale. The Tax Court held they were not so deductible, but went on to say that "whether such taxes are deductible as taxes paid within the meaning of Section 23(c–1), Internal Revenue Code of 1939, for the purposes of determining net income is of no concern in the instant case," obviously because petitioner had theretofore relied on their deductibility, as an expense of the sale. Petitioner, then, after the filing of the findings and opinion of the Tax Court, and before entry of decision, made a motion for reconsideration and further hearing in order to present his claim that the taxes paid on the sale of real estate were properly deductible as taxes under Section 23(c) (1).

The Tax Court declined to grant petitioner's motion. In the government's brief it is said that, as to the item for the real estate taxes paid: "The taxpayer does not say that the Tax Court was wrong in refusing to consider the taxes as an expense of sale, but he argues that the Tax Court raised the question of deductibility of the taxes under Section 23(c) (1) and had the duty of deciding it. There is no merit to this contention. A careful reading of the Tax Court's opinion on this point shows it did not attempt to decide the question of whether the taxes were deductible under Code Section 23(c) (1), since that question had not been raised." The government's brief continued: "Moreover, there is nothing in the record, other than taxpayer's bare computation figures, to show who paid the taxes, what they were for, the amount paid, etc.; nor did the taxpayer claim them as a deduction under Code Section (c) (1)." In view of the fact that petitioner, in his motion for reconsideration and further hearing, before the entry of the decision of the Tax Court, asked the Tax Court to pass upon this issue, and because the case must, in any event, be remanded, it is our view that petitioner should be given the right to amend in order to raise this question, and to introduce proof to show who paid the taxes, what they were for, and the amount paid.

■ One point remains for consideration. It is maintained by petitioner that before he can be charged with the receipt of income as a result of receiving checks representing funds of corporations in which he was a stockholder, it must be shown that the corporations had earnings and profits equal to the amount of such checks. We find this contention not meritorious in view of our decision in Davis v. United States, 6 Cir., 226 F. 2d 331, the principle of which here governs. Drybrough v. Commissioner, 6 Cir., 238 F.2d 735, cited by petitioner, is not applicable to this case. There it was claimed that funds received by two stockholders from a corporation were dividends. The court held that funds were taxable as dividends only to the extent that the corporation had earnings and profits for the years in which they were withdrawn. It is not contended in the instant case that the funds in question were dividends. If they were not dividends, petitioner would be charged with the receipt of income, even if the corporations did not have earnings and profits equal to the amounts of the checks, since petitioner received money over which he had complete control, and which he took

as his own, treated as his own, and which resulted in economic value to him.

In accordance with the foregoing, the decision of the Tax Court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.