Clarke Fashions, Inc. v. Commissioner. Maurice B. Clarke and Beatrice A. Clarke v. Commissioner.
Clarke Fashions, Inc. v. Commissioner
Docket Nos. 82524 and 82525.
United States Tax Court
T.C. Memo 1961-121; 1961 Tax Ct. Memo LEXIS 230; 20 T.C.M. (CCH) 589; T.C.M. (RIA) 61121; April 28, 1961
Lester H. Salter, Esq., 146 Westminster St., Providence, R.I., and James R. McGowan, Esq., for the petitioners. Charles T. Shea, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: The respondent determined deficiencies against Clarke Fashions, Inc. in income tax for the calendar years 1956 and 1957 in the respective amounts of $568.07 and $2,746.88. Respondent also determined deficiencies against Maurice and Beatrice Clarke in income tax for the calendar years 1955, 1956, and 1957 in the respective amounts of $636.43, $1,021.60 and $1,176.39. The issues to be decided are whether the amounts of $1,322.50, $2,678.75, $4,242, and $5,332, which were paid by Clarke Fashions, Inc. to Maurice Clarke or Murray Jay in the year 1954 and to Maurice Clarke in the years 1955, 1956, and 1957, respectively, *231 and were deducted by Clarke Fashions, Inc. as travel expenses, were properly deducted as travel expenses, or, as respondent has determined, did not constitute deductible travel expenditures to Clarke Fashions, Inc. and for the years 1955, 1956, and 1957 constituted gross income to Maurice and Beatrice Clarke under section 61 of the Internal Revenue Code of 1954, and whether Maurice and Beatrice Clarke are entitled to deductions in the amounts of $287.50 and $390 for the years 1955 and 1956, respectively, as expenses of business entertainment. Findings of Fact The petitioners in this case are Clarke Fashions, Inc., (hereinafter sometimes referred to as Clarke Fashions), a corporation organized and existing under the laws of Massachusetts with its principal office at 120 Harrison Avenue, Boston, Massachusetts, and Maurice and Beatrice Clarke, individuals residing at 49 Woodchester Drive, Chestnut Hill, Massachusetts. The income tax returns for the years here involved both corporate and individual, were filed with the district director of internal revenue at Boston, Massachusetts. Clarke Fashions kept its books of account and filed its income tax returns *232 on an accrual basis and its taxable year was the calendar year. For some 29 years before April 1954, Maurice Clarke (hereinafter referred to as petitioner) was a salesman on the road for College Mode, Inc., a Boston firm engaged in manufacturing sportswear. In the latter few years with this enterprise petitioner had become a 25 percent owner and his duties extended to buying fabrics and styling the garment products, as well as selling. Petitioner's selling territory for College Mode consisted of Maine, New Hampshire, Vermont, western Massachusetts, and Connecticut. In April 1954, petitioner with Murray Jay, also a sportswear salesman, formed a Massachusetts corporation, Jay-Clarke Fashions, Inc., to manufacture women's sportswear for sale to retail stores, department stores, and specialty shops. Each invested $10,000 in the new corporation and received 50 percent of its stock. Murray Jay became president of Jay-Clarke Fashions, Inc., and petitioner became its treasurer. At the beginning of Jay-Clarke Fashions, Inc. it was planned that Murray Jay would spend most of his time in sales promotion, i.e. selling on the road, and that petitioner would handle the purchasing, design, *233 and production of the sportswear garments while at the same time continuing to contact on the road certain accounts with whom he had built up friendly relations. Murray Jay did, however, accompany petitioner on two business trips to New York City and also on various visits to local contractors all in order that he could learn that phase of the business relating to the purchase of the raw materials and manufacture of the garments. Within 3 or 4 months after the corporation was created in April 1954, a rift developed between petitioner and Murray Jay, primarily because of petitioner's dissatisfaction with Murray Jay's lack of aggressive salesmanship. Consequently, in the latter part of July 1954, Murray Jay was bought out and Ida Korey, petitioner's sister and the accountant for Jay-Clarke Fashions, Inc., succeeded to Murray Jay's interest in the corporation. At this time the corporation's name was changed to Clarke Fashions, Inc., and at about the same time petitioner became its president and treasurer. With the departure of Murray Jay from the enterprise, petitioner took over all the selling duties for the New England area. In the latter part of September 1954, the corporation *234 hired another salesman, Harry Miller. Miller was given the Greater Boston, eastern Massachusetts, and Rhode Island areas as his selling territory, the petitioner retaining the other New England territories. Petitioner's duties as purchaser for the corporation necessitated his going to New York City on the average of once every 3 or 4 weeks. The length of these trips would vary from 3 or 4 days to a week or more. The center of the garment industry is located in New York City, and although fabrics are made in the South and elsewhere, one must go to New York City to make the necessary purchases. Clarke Fashions made purchases of fabric materials for the years 1954 through 1957 totalling $410,265.39. These purchases were made from 148 different suppliers of which 126 are located in New York City. Petitioner was responsible for these purchases. Once the fabric materials were purchased, petitioner did the necessary designing or styling and supervised the cutting which was done on the corporate premises. The cut materials were then sent out to contractors who did the necessary sewing, pressing and finishing. These contractors changed from time to time but they were all located within *235 a few miles of Boston, e.g. Fall River, Lawrence, New Bedford, and Brockton, Massachusetts. In order to make sure that a contractor was properly set up to handle the work for Clarke Fashions, petitioner would go to the contractor's business premises to oversee the initial operation. Once the contractor was properly set up, Sam Zahar, the cutter for Clarke Fashions, would take over and iron out any further production problems with respect to the contractors. Petitioner's main activity with Clarke Fashions was selling on the road. During the years 1954 to 1957 petitioner made sales and sales visits to at least 112 department stores, specialty shops and sports shops which handle women's sportswear located in about 80 different cities and towns in Maine, Vermont, New Hampshire, Connecticut, New York and western Massachusetts
Petitioner's selling activities commenced just after New Year's with the "spring line." This would consist of between 75 and 100 different styles, and each one would have to be shown on a hanger. Petitioner could make on the average only two sales presentations of the full line in one day. It took petitioner about 8 weeks to make the complete sales circuit when *236 showing the spring line or the fall line which started in June or July of the year. At other times petitioner could complete his sales route in 3 weeks. Petitioner did not always stop at every store on very circuit. Sometimes he would telephone customers to ascertain whether they needed anything and, if so, take the order over the telephone. Larger or more regular customers received closer attention by petitioner, but even the less active accounts were visited by petitioner at least six times a year. Petitioner was on the road selling practically every week of the year with the exception of Thanksgiving and Christmas weeks or when he was in New York City buying fabrics. When Clarke Fashions had just started its business, petitioner would, while on the road, stay overnight at inexpensive tourist houses for about $2 a night in order to save the corporation money. In later years after the corporate earnings had improved and new motels had sprung up in the New England area, petitioner would stay overnight at these more expensive motels which offered nicer accommodations. Petitioner also made it a practice to take out to lunch any customers or prospective customers with whom he was dealing *237 at the time. Also, petitioner charged to the corporation and received reimbursement for occasional 80-cent movies which he went to while on the road. While selling for Clarke Fashions, petitioner also did a small amount of selling for Clarke Sales. Clarke Sales was a corporation set up by petitioner and Murray Jay at the same time that Clarke Fashions, or Jay-Clarke Fashions, Inc., was created. The purpose in creating Clarke Sales was to enable petitioner and Murray Jay to continue to sell for other companies on a straight commission basis, a line of women's tee shirts, sweaters, and blouses, which line in no way was competitive with the products of Clarke Fashions. There was practically no investment made in Clarke Sales, just enough to buy stationery. When Murray Jay was bought out in July 1954, Ida Korey acquired his 50 percent interest in Clarke Sales. Thereafter, petitioner continued to make occasional sales of women's tee shirts and sweaters for Clarke Sales. In 1956 or 1957 Clarke Sales ceased its business operations. After Murray Jay left Clarke Fashions in 1954, the usual procedure for paying corporate travel expenses incurred by petitioner and Harry Miller was for the *238 corporation to pay each of them a weekly advance of $50, which was charged to travel on the corporate books and records. Usually $50 a week did not fully compensate petitioner for his travel expenditures, so periodically additional adjusting travel payments were paid to petitioner. If in any one week petitioner did not have $50 of travel expenditures, this fact would also be considered in computing the amount of adjusting payments made to petitioner. Petitioner made notations of his travel expenditures in small notebooks and the data therein recorded was transcribed on to monthly expense sheets by an employee of Clarke Fashions. During the years 1955 and 1956 petitioner did small amounts of entertaining at his home and elsewhere for customers and their families when they were visiting in Boston. For the taxable period, which began with its incorporation in April 1954, and ended December 31, 1954, Clarke Fashions claimed on its Federal income tax return the following amounts as travel: Travel
$2,440.83
Employees' travel
800.00
The $800 represents amounts paid to Harry Miller by checks made payable to either Miller, cash, or payroll. The $2,440.83 amount is *239 composed of payments charged to the following people or hotels: Petitioner
$1,641.50
Murray Jay
510.00
Hotels
289.33
$2,440.83
The $1,641.50 charged to petitioner is composed of checks payable to petitioner totalling $916, of checks payable to payroll of which $650 is charged to travel expense, of a check payable to cash of which $50 is charged to travel, and cash payments or adjustments charged to petty cash in the amount of $25.50. The $510 charged to Murray Jay is composed of checks payable to Murray Jay of which $498.50 was charged to travel expenses, and a $11.50 adjustment charged to petty cash and treated as a travel expense. The $289.33 charged to hotels is composed of checks in the amount of $188.43 made payable and paid to various hotels, a $100 check payable to cash, and a 90-cent payment charged to petty cash. While Murray Jay was active as president of the corporation, he and petitioner co-signed all corporate checks. Of the checks made payable to petitioner and charged to travel expense, checks in the amount of $428 were co-signed by petitioner and Murray Jay, and all the checks payable to Murray Jay of which $498.50 was charged to travel *240 expense were similarly co-signed. For the year 1954 of the $3,240.83 claimed as travel expenses respondent disallowed $1,322.50 representing a portion of the $2,151.50 shown on the books of Clarke Fashions as paid to petitioner and Murray Jay for travel expenses. For its taxable year 1955, Clarke Fashions claimed a deduction for travel of $6,565.05 of which all but $1 consisted of payments as follows: Petitioner
$3,743.40
Harry Miller
2,495.00
Sam Zahar
150.00
Others
Hotel Edison
$119.35
Hotel Lexington
54.35
Petty Cash
1.95
175.65
$6,564.05 The $3,743.40 amount paid to petitioner as travel expenses was paid by checks payable either to petitioner or payroll. The amounts paid to the hotels were paid by checks payable to the hotels. For the year 1955 of the $6,565.05 claimed as travel expenses respondent disallowed $2,678.75 representing a portion of the $3,743.40 shown on the books of Clarke Fashions as paid to petitioner for travel expenses. This $2,678.75 amount was treated by respondent as taxable income to petitioner for his taxable year 1955. For its taxable year 1956, Clarke Fashions deducted a total of $5,940.20 as travel expenses *241 which represented payments made as follows: Petitioner
$5,145.20
Sam Zahar
795.00
$5,940.20 In addition Clarke Fashions deducted $3,025 as travel expenses incurred by Harry Miller which was claimed on the corporate return under commissions. The $5,145.20 amount paid to petitioner and designated as travel expenses was paid by checks payable either to petitioner or payroll. For the year 1956 of the $5,940.20 claimed as travel expenses respondent disallowed $4,242 representing a portion of the $5,145.20 shown on the books of Clarke Fashions as paid to petitioner for travel expenses. This $4,242 amount was treated by respondent as taxable income to petitioner for his taxable year 1956. For its taxable year 1957, Clarke Fashions deducted $6,529.76 as travel expenses which represented payments made as follows: Petitioner
$6,447.00
Fred Schlanger
25.00
Louis Nash
56.86
Petty cash
.90
$6,529.76 In addition Clarke Fashions deducted $3,938.38 as travel expenses incurred by Harry Miller which was claimed on the corporate return under commissions. The $6,447 amount paid to petitioner and designated as travel expenses was paid by checks payable *242 either to petitioner or payroll. For the year 1957 of the $6,529.76 claimed as travel expenses respondent disallowed $5,332 representing a portion of the $6,447 shown on the books of Clarke Fashions as paid to petitioner for travel expenses. This $5,332 amount was treated by respondent as taxable income to petitioner for his taxable year 1957. Ultimate Findings of Fact Of the amounts claimed as travel expenses by Clarke Fashions for the years 1954, 1955, 1956, and 1957, the amounts of $1,998.75, $6,376.88, $5,682.94, and $6,207.41 for the respective years were ordinary and necessary business expenses of the corporation. For the years 1955, 1956, and 1957, petitioner received distributions from Clarke Fashions in the respective amounts of $187.17, $257.26, and $322.35 which are taxable as dividends to petitioner to the extent of the earnings and profits of Clarke Fashions. Petitioner spent $100 in each of the years 1955 and 1956 for business entertainment expenses. Opinion The question presented here is entirely factual. Respondent has disallowed deduction of certain amounts claimed by Clarke Fashions for the years 1954, 1955, 1956 and 1957 on the grounds that there is *243 no substantiation that the amounts claimed as travel expenses were ever, in fact, paid. Moreover, for the years 1955, 1956 and 1957 respondent has treated the same amounts which he disallowed as deductions to Clarke Fashions as taxable income to Maurice Clarke. The issue is, therefore, whether the amounts claimed as travel expenses were actually paid for travel expenses. There is another factual issue, whether petitioner may deduct all or any part of amounts claimed as entertainment expenditures which respondent has also disallowed for lack of substantiation. Although no deficiencies were determined against Clarke Fashions for the years 1954 or 1955, a decision must be made with respect to those 2 years regarding the claimed travel expense deductions in order that the net operating losses to be carried over to the years 1956 and 1957 may be properly computed. In disallowing deduction for the claimed travel expenses, respondent has allowed a part of such claimed amounts and disallowed the balance. The amount of payments to either petitioner or Murray Jay for which respondent did allow deduction as travel expense to Clarke Fashions for the year 1954 was $729. For each of the years *244 1955, 1956, and 1957 respondent allowed a deduction to Clarke Fashions as travel expenses for payments of $3,885.30, $1,698.20 and $1,197.76, respectively. The evidence in the record bearing on the substantiation of the amounts claimed as travel expenses consists of numerous checks drawn by Clarke Fashions or its predecessor, Jay-Clarke Fashions, Inc., and made payable to either petitioner, Murray Jay, payroll, cash, various hotels or other employees of Clarke Fashions, and the testimony of petitioner and Ida Korey. The corporate books in which the claimed amounts of travel expenses were recorded were available at the trial. Petitioner had kept notebooks of his travel expenditures and monthly travel expense statements had been drawn up from the information contained therein, which were the basis for the corporate disbursements charged to travel expenses. We have considered petitioner's testimony with respect to his travel expenditures and have found it credible. The record shows beyond doubt that petitioner is an extremely industrious man and that he is primarily responsible for the operation of Clarke Fashions. His testimony with respect to his travel is to some extent substantiated *245 by corporate checks made payable to various hotels in New York City and elsewhere which presumably were in payment for hotel expenses incurred by petitioner. The far range of his selling territory and the frequency of his selling trips lend credence to the amounts of the claimed travel expenses. Also, the amounts claimed to have been spent by petitioner for travel are commensurate to the amounts spent by Harry Miller, an employee and not a stockholder, when it is considered that petitioner's sales territory takes him farther from his home and petitioner also took trips to New York City, for buying fabrics. Petitioner testified that while selling on the road he charged to travel expense an occasional "80 cent movie" and also that he did a small amount of selling for Clarke Sales, Inc., a corporation separate from Clarke Fashions. The amount or extent of petitioner's movie going or selling for Clarke Sales while on the road is not specified in the record. However, it is clear that expenses incurred in either activity would not be properly deductible by Clarke Fashions. We have weighed all the evidence carefully and have decided that for the years 1955, 1956, and 1957, 95 percent *246 of the claimed deductions for payments to petitioner should be allowed as travel expenses to Clarke Fashions and consequently such payments do not constitute income to petitioner. For the year 1954 we again conclude that 95 percent of the payments to petitioner for travel expenses are deductible by Clarke Fashions. However, for 1954 the respondent's disallowance extends also to the amount of $510 claimed as travel expenses incurred by Murray Jay. The evidence respecting Murray Jay's travel expenses for the 3 to 4-month period he was associated with Clarke Fashions in 1954 is far from satisfactory. Apparently, he accompanied petitioner on two trips to New York and on several trips to various local contractors both to observe and learn how that phase of the business was conducted. Murray Jay did some selling for Clarke Fashions but there is no evidence in the record as to the amount of traveling he did in this work. We find that $150 of the $510 traveling expenses claimed to have been incurred by Murray Jay are deductible by Clarke Fashions. The next issue is whether the payments to petitioner to the extent of the 5 percent portion for the years 1955, 1956, and 1957 which we have *247 not allowed as deductible expense items to Clarke Fashions are to be treated as income to petitioner. Petitioner argues that none of the money he received would constitute income to him because he derived no personal benefit or advantage from the payment, citing Weir v. Commissioner, 283 F. 2d 675 (C.A. 6, 1960), reversing a Memorandum Opinion of this Court. We feel, however, that petitioner's testimony regarding his movie going and selling activities for Clarke Sales effectively distinguishes this case from the Weir case. It is our conclusion that these 5 percent amounts constitute dividends to petitioner and are taxable to him as regular income to the extent of the corporation's earnings and profits. Petitioner has claimed deduction of $287.50 and $390 as entertainment expenses for the years 1955 and 1956. Ida Korey who made out petitioner's returns for these 2 years, arrived at these amounts after consulting with Beatrice Clarke, petitioner's wife. However, Beatrice never testified. The only proof that these expenditures were ever made was petitioner's testimony about his practice of entertaining business guests and their families when they were visiting in Boston. *248 No record of the amounts spent was ever made. Petitioner was not very specific on this point and some of his testimony related to his entertainment activities in years not in issue. Applying our best judgment to the facts at hand we find that $100 of the claimed deductions for entertainment expenses is allowable to petitioner in each year. Cf. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Decision will be entered under Rule 50.