DANIEL W. ROBIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Robin v. Commissioner
Docket No. 7695-70.
United States Tax Court
T.C. Memo 1978-235; 1978 Tax Ct. Memo LEXIS 279; 37 T.C.M. (CCH) 1009; T.C.M. (RIA) 78235; June 26, 1978, Filed Harold Morley, Jr. and James J. McInnis, for the petitioner. David N. Brodsky, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioner's Federal income tax and additions to tax under section 6653(b): [1]/ Addition Year
Deficiency
(sec. 6653(b))
1961
$ 24,430.61
$12,215.31
1962
42,709.64
21,354.82
1963
55,543.89
27,771.95
1964
11,465.66
5,732.83
$134,149.80
$67,074.91
Concessions having been made by both parties, the issues remaining for decision are as follows: 1. Whether petitioner had gross receipts from his sole proprietorship, Marine Transfer Company, of $57,689.25, $110,002.50, $127,723, and $71,838.72 during the years 1961 through 1964, respectively. 2. Whether petitioner is entitled to certain *281 business expense deductions claimed on his Federal income tax returns for 1961 to 1964. 3. Whether petitioner received a dividend of $130 from Detroit Steel Corporation in 1962. 4. Whether petitioner realized a net short-term capital gain of $2,109.75 from the sale of securities in 1962. 5. Whether petitioner is entitled to a standard deduction of $529.11 for 1962. 6. Whether petitioner is entitled to personal exemption deductions in the amount of $600 for his wife in each of the years 1961 and 1962. 7. Whether any part of the underpayments for 1961 through 1964 (if such exist) were "due to fraud" within the meaning of section 6653(b) so as to render petitioner liable for additions to tax. FINDINGS OF FACT Petitioner Daniel W. Robin (hereinafter petitioner) was a legal resident of Staten Island, New York, when he filed his petition. For 1961 through 1964, petitioner filed Federal income tax returns with the District Director, Internal Revenue Service, Manhattan, New York. During 1961 through 1964, petitioner operated a sole proprietorship using the tradename Marine Transfer Company (hereinafter Marine). His business involved the removal of refuse from *282 vessels docked in New York harbor. Marine's principal customer was United States Lines (United), the owner of a large fleet of freighter ships. United anchored its ships at various locations in New York harbor. Marine normally serviced only those ships anchored in the lower harbor area near its offices on Staten Island. On occasion, however, Marine would also service United's ships docket at United's terminal at the North River Chelsea piers. The fees charged by Marine depended, in part, upon the distance and time involved in performing the refuse removal services. Copies of United's vouchers evidencing payments to Marine for garbage removal services rendered to United's ships show that, for 1961 through 1964, payments per ship varied from $115 to $193.75 and averaged approximately $150. In 1961, $115 was the lowest and most prevalent payment whereas by 1964, this base amount had increased to approximately $135. Since most of United's ships were in port for only limited periods of time, United would usually notify Marine when its services were needed. However, for those ships anchored for a substantial length of time, petitioner would make routine periodic trips to the *283 ships and pick up the garbage. United's vouchers show that for 1961 through 1963, Marine made approximately 445, 725, and 835 service calls, respectively, and for part of 1964, it made approximately 465 such calls. A small number of these calls were repeat service calls made to the same ship on the same day. [2]/ Because of its limited capacity, the boat which Marine chartered for its operation was generally able to carry garbage from only one ship (in rare instances, two ships). The largest numbers of ships serviced on any one day and in a month are as follows: Year
Day
Month
1961
15
59
1962
13
73
1963
16
83
1964
15
82
United's vouchers reflect payments to Marine in the following amounts: Year
Amount
1961
$ 57,439.25
1962
110,002.50
1963
127,723.00
1964
71,838.75
In 1961, Marine received an additional $250 from Moore McCormack Lines for garbage removal services rendered. Joseph Kennedy (Kennedy), an accountant, who is now dead, prepared petitioner's Federal income tax returns for the years *284 in issue. Kennedy maintained petitioner's records, and they could not be located after his death. On his Federal income tax returns for 1961 through 1964, petitioner reported as gross receipts from Marine's garbage removal service the following amounts: Year
Amount
1961
$36,863.58
1962
34,925.70
1963
12,865.89
1964
31,725.00
On his 1962 return, petitioner did not report any dividend income or short-term capital gain from the sale of securities. In addition to expense deductions not in issue, petitioner reflected on his income tax returns the following expenses relating to Marine's operations: Legal and
Profes-
Enter-
Diver's Year
Chartering
Insurance
sional
Travel
tainment
Fee
1961
$22,250.50
$1,210.40
$420.00
$865.90
$4,874.70
$ 1,210.00
1962
20,180.00
1,040.74
720.00
4,615.50
1,200.00
1963
4,640.90
973.60
840.00
1964
21,150.00
894.00
2,370.00
Petitioner's 1961 and 1962 income tax returns indicate that he was married and was filing joint returns whereas his 1963 return indicates he was married but that he was filing a separate return. Although what purports *285 to be the signature of Ruth Robin, petitioner's wife, appears on his 1962 return, she filed separate returns for both 1961 and 1962. On his returns for 1961 and 1962, petitioner claimed a $600 personal exemption deduction for her. In addition, he took a standard deduction of $529.11 on his 1962 return. In his statutory notice of deficiency, respondent determined that the following adjustments should be made in respect of the items in controversy for 1961 through 1964: 1961
1962
1963
1964
Business
income
$20,825.67
$ 75,076.80
$114,877.11
$40,113.72
Chartreing
expense [1]/
16,300.50
(15,270.00)
(30,709.10)
(14,100.00)
Insurance
expense
1,210.40
1,040.74
973.60
Legal and pro-
fessional ex-
pense
420.00
Travel expense
265.90
120.00
294.00
Entertainment
expense
3,274.70
$3,015.50
2,370.00
Diver's fees
1,210.00
1,200.00
840.00
Dividend in-
come
130.00
Capital gain
2,109.75
Standard de-
duction
29.11
Exemption de-
duction
600.00
600.00 In *286 addition, respondent determined that petitioner is liable for an addition to tax equal to 50 percent of the underpayments pursuant to section 6653(b). OPINION Issue 1. Gross Receipts
To support his determination of the amounts of petitioner's gross receipts, respondent relies on the stipulation and copies of Unitd's vouchers which show that Marine received a total of $57,689.25, $110,002.50, $127,723.00, and $71,838.72, [3]/ in the years 1961 through 1964, respectively. The papers in evidence are copies of the vouchers used by United in maintaining its accounting records. Although not complemented by such supporting documentation as Marine's invoices and canceled checks, we think Marine received payments from United pursuant to these vouchers in the amounts indicated thereon. The general testimony offered in support of petitioner's position was not sufficient to refute the inherent reliability of the accounting records of United, an unrelated corporation. Petitioner testified that Marine charged *287 for its garbage removal service a flat rate of $75 per ship with added increments up to a maximum of $50 per ship for travel time and that the most prevalent charge was $75. In addition, he stated that, because of the travel time involved, a maximum of 2 ships could be serviced on any one day and that the minimum number of ships serviced per month was 15. However, we are not convinced by petitioner's testimony. First, there is an inherent inconsistency between petitioner's statements that the most prevalent charge for service was $75, which did not involve travel time, and that only 2 ships could be serviced in one day because of the required travel time. In addition, petitioner was unable to explain why the voucher data, which indicated that the fee charged per day (i.e., a minimum of $115 in 1961 and by 1964 $135) and the number of ships serviced in a day (e.g., on February 6, 1963, 16 ships were serviced) or month (e.g., in July 1963, 83 ships were serviced), were so much higher than the maximum service calls he claims he made. His only "explanation" for the differences was the question: "Who made those up?" The testimony of two other witnesses, William F. Kolbe and Neil *288 McCormack, both of whom worked in United's marine superintendent's office during 1961 through 1964, in general, parallels petitioner's testimony. However, both of those witnesses were petitioner's personal friends; neither knew specifically what the financial arrangement was between United and Marine; nor could they testify, either because they never knew or had forgotten, to specifically how many ships were served by petitioner. We do not think their testimony is sufficient to show that the copies of United's accounting records were not reliable records. Petitioner has not carried his burden of proof on this issue. Issue 2. Business Deductions
Section 162(a) allows a deduction for all of the ordinary and necessary expenses paid or incurred in carrying on a trade or business. Petitioner argues that the expense deductions taken on his 1961 through 1964 Federal income tax returns, described in our Findings, related to his garbage pickup service and were normal business expenses of that operation. We are convinced that petitioner incurred some part but not all of the amounts of these claimed expenses. The real issue is the amounts of the allowable deductions. The entire *289 amounts of the insurance expenses and diver's expenses for 1961 through 1963 and the legal expenses for 1961 were disallowed. We are satisfied that petitioner incurred some expenses for these purposes. In such circumstances, we are required to make an approximation of the allowable amount in accordance with our best judgment. Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930). Bearing heavily upon petitioner, "whose inexactitude is of his own making," we hold that petitioner is entitled to insurance expense and diver's expense deductions of $600 for 1961, 1962, and 1963, and a legal expense deduction of $150 for 1961. Cohan v. Commissioner,supra at 544. Respondent's allowances, however, with regard to the chartering expenses for all 4 years, the traveling expenses for 1961, 1962, and 1964, and the entertainment expenses for 1961 and 1962 were generous for those purposes and in light of petitioner's failure to present any reliable evidence to show that respondent erred, the determinations in the notice of deficiency will be sustained. All of the 1964 entertainment expense deduction of $2,370 was disallowed for lack of substantiation. *290 In this connection, section 274(d) provides that such expenses must be substantiated by "adequate records or by sufficient evidence corroborating his own statement" as to the amount of the expense, the time, place and business purpose of the entertainment, and the business relationship of the person entertained. Since petitioner did not provide the statutorily required substantiation, respondent's determination is sustained. Issues 3 and 4. Dividend and Capital Gains
The notice of deficiency determined that petitioner had unreported dividend income of $130 in 1962 and unreported short-term capital gain from five specific sales of stock in that year. The petition alleges there is no factual basis for these determinations, but petitioner offered no testimony bearing on these issues except a general statement that his returns as filed were correct. Petitioner's general testimony, standing alone, is insufficient to carry his burden of proof, Rule 142(a), Tax Court Rules of Practice and Procedure, even though that burden requires petitioner to prove a negative-- that he did not receive the income which respondent determined. Cf. Weir v. Commissioner,283 F.2d 675, 679 (6th Cir. 1960), *291 revg. a Memorandum Opinion of this Court. Issues 5 and 6. Personal Exemption Deductions and Standard Deductions
On his 1961 and u962 Federal income tax returns, petitioner claimed $600 personal exemption deductions for both himself and his wife. In addition for 1962 he took a standard deduction of $529.11. [4]/ Respondent contends that petitioner may be allowed only the personal exemption deduction for himself and a $500 standard deduction as allowed under section 141 [5] for persons who are married and who file separate returns. We agree. The returns for these years contain the notation "Married filing joint return," and the 1962 return itself indicates it was signed by petitioner's wife. Petitioner, however, testified that his wife filed separate returns for both years. Even though there is some uncertainty whether petitioner was referring to 1963 and 1964, for which he filed *292 separate returns rather than to 1961 and 1962, we have no other evidence to the contrary and we therefore accept his testimony as given. Petitioner would have been entitled to claim a personal exemption deduction for his wife even though they did not file joint returns if his wife had no gross income and was not the dependent of some other person. Sec. 151(b). But we have only petitioner's self-serving testimony that his wife had no income for 1961 and 1962, and we are not satisfied that his testimony is correct. Our doubts stem to a large extent from the fact that she filed separate returns for those years. Petitioner's uncorroborated testimony is insufficient to carry his burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.
Issue 7. Section 6653(b) Fraud Penalty
Respondent determined that at least part of petitioner's underpayments of tax for the years in controversy was "due to fraud" within the meaning of section 6653(b). After consideration of the entire record before us, we think respondent has carried his burden of proving this determination by clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure.
*293 We think petitioner's failure to report the dividend from Detroit Steel and the capital gain from the security sales was due to oversight or carelessness, and such mere understatement of income does not establish fraud. Otsuki v. Commissioner,53 T.C. 96, 106 (1969). However, petitioner's failure to report the correct amount of gross receipts from his garbage removal service was deliberate. During these years petitioner failed to report amounts totaling $250,873.30, or 68.3 percent of the total gross receipts of his business. Amounts that large could hardly have been omitted inadvertently. Such consistent understatements of substantial amounts of the gross receipts from 1961 through 1964 are "persuasive evidence of fraudulent intent to evade taxes." Otsuki v. Commissioner,supra at 108. Petitioner's only explanation is that it was physically impossible for him to have made the necessary servicing trips to earn the gross receipts in the amounts reflected in United's duplicate vouchers. As discussed above, this explanation is not convincing. While the situation is somewhat unusual, we think petitioner's understatement of his chartering *294 expenses for 1961, 1962, 1963, and 1964, is also a strong indication of fraud. He testified that he kept only small notes as to expenses incurred, but in response to questioning as to whether the chartering expense listed on his tax return was correct, he stated: "Well, that's as near as I could figure, yes. That's the accountant's figures." We think a proper inference from these understatements is that petitioner attempted to reduce the chartering expense deductions so that they would be more in line with the gross receipts reported on his tax returns. In that manner, he hoped to avoid casting suspicion on his return. Clark v. United States,211 F.2d 100, 103 (8th Cir. 1954), cert. denied, 348 U.S. 911 (1955). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.
2. /↩ For 1961 through 1964, respectively, Marine made approximately 25, 20, 45, and 35 of these repeat trips.
1. /↩ For 1962, 1963, and 1964, respondent determined that petitioner failed to claim chartering expenses to the extent to which he was entitled.
3. /↩ Where there is a discrepancy in the amount between the notice of deficiency and United's vouchers, respondent concedes that the amount in issue is the lesser.
4. /↩ Petitioner claimed a $525.45 standard deduction for 1961. On brief, he conceded that the proper deduction was $500. 5. SEC. 141. STANDARD DEDUCTION. * * * in the case of a separate return by a married individual the standard deduction shall not exceed $500.↩