David G. **BAIRD** and Mildred B. **Baird,**
Appellants,

v.

**COMMISSIONER OF INTERNAL
REVENUE.**

**No. 18087.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 18, 1970.

Decided Nov. 17, 1970.

As Amended Jan. 27, 1971.
Rehearing Denied Feb. 12, 1971.

Biggs, Circuit Judge, dissented and
filed opinion.

Murray Gartner, Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for appellants, Justin N. Feldman, Louis B. Livingston, New York City, of counsel.

Paul M. Ginsburg, Dept. of Justice, Tax Division, Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Bennet N. Hollander, Attys., Dept. of Justice, Washington, D.C., for appellee.

Before BIGGS, SEITZ and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Taxpayers appeal a decision of the Tax Court sustaining a deficiency in income tax asserted against them for the year 1955 in the amount of $459,542.01. The Tax Court found that the taxpayers failed to sustain their burden of showing the incorrectness of the Commissioner's determination that the transfer of 27,000 shares of Bellanca Aircraft Corporation stock from the partnership of L. Albert & Son to the Winfield Baird Foundation in 1955 constituted income to the taxpayers.

Petitioner [1] (taxpayer) is a well-known philanthropist who served as sen-ior trustee of the Winfield Baird Foundation (Foundation). In 1955, he was a senior partner in the stock exchange firm of Baird & Company and served as a director of several business institutions and public charities. At times, including 1955, he functioned as a business broker or finder in connection with the merger and acquisition of corporations.

In 1951, taxpayer met Sidney L. Albert (Albert), who, with his wife, owned the partnership of L. Albert & Son, which engaged in the purchasing and rebuilding of used rubber machinery in Akron, Ohio. Thereafter, the Foundation, represented by taxpayer as trustee, engaged in several transactions with Albert or L. Albert & Son, including the making of secured loans and the sale of the Lake City Malleable Iron Company owned by the Foundation. Albert frequently visited taxpayer in his office to discuss business conditions and trends. There was no evidence of any social relationship between Albert and taxpayer.

Albert became interested in selling the partnership business and discussed this situation with taxpayer, who introduced Albert to Fred O. Schoeffer (Schoeffer), as a representative of a possible interested party. In 1955, on petitioner's business premises, Albert and Schoeffer discussed the possibility of merging L. Albert & Son into Sentry Safety Control, a corporation in which Schoeffer and the Foundation had substantial interests, but they quickly determined that the merger was not feasible. During the course of this meeting, Schoeffer telephoned Howard Hansell (Hansell), who had formed a group which had purchased a substantial interest in Bellanca Aircraft Corporation (Bellanca) and desired an acquisition for Bellanca. This conversation was the inception of a transaction between Bellanca and L. Albert & Son, whose details were arranged through negotiations by Albert, Hansell, Schoeffer, and one Joseph Patrick (Patrick).

---

1. Taxpayer's wife was also a petitioner solely because they filed a joint return.

Taxpayer had known all of the principals for several years and had contact with them in the course of his various business activities. During the Bellanca-L. Albert & Son negotiations, he telephoned Albert to introduce Hansell and to facilitate arranging an appointment for Hansell to inspect the L. Albert & Son plant. Taxpayer also discussed with Schoeffer the question of Schoeffer's proper finder's fee for the Bellanca-L. Albert & Son transaction.

On March 15, 1955, L. Albert & Son exchanged substantially all its assets for 1,071,250 shares of Bellanca then worth approximately $12,000,000. Out of these shares, Hansell received 15,000 shares, Schoeffer 7,000, and Patrick an indeterminate number, as finder's fees or commissions. Both Hansell and Schoeffer experienced difficulty in obtaining from Albert what they considered an adequate finder's fee.

On August 15, 1955, L. Albert & Son transferred 27,000 shares of Bellanca stock, which then had a value of $671,-625, to the Foundation. L. Albert & Son reported this transfer as a charitable contribution on its 1955 partnership income tax return. Albert's other charitable contributions for 1955 amounted to $2,400. The Commissioner made the deficiency determination in issue and taxpayer's action followed.

■ In a suit to contest a deficiency determination, the Commissioner's determination is presumptively correct and the burden of disproving it rests upon the petitioner. Tax Court Rule 32; Hoffman v. C. I. R., 298 F.2d 784, 788 (3rd Cir. 1962). But if a taxpayer demonstrates that the Commissioner's determination was arbitrary he is not required to assume the burden of disproving it. Helvering v. Taylor, 293 U. S. 307, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935); cf. Hoffman v. C. I. R., *supra.* Taxpayer contends that the record estab-

lishes the arbitrary nature of the Commissioner's determination and thus the Tax Court erred in placing the burden of proof on him. We address ourselves to that issue.

In his opening statement to the Tax Court the Commissioner stated that he "initially discovered Mr. Baird's participation in the Bellanca deal from certain testimony that was given before the S. E. C. about the Bellanca transactions. The parties that gave the testimony were one Sidney L. Albert and Howard Hansell. That testimony was to the effect that a fee was paid to David Baird in the form of a 27,000 share donation to the Winfield Baird Foundation, one of David Baird's wholly owned foundations." There is nothing in this record to show that such testimony was not given before the S. E. C. The Commissioner's deficiency determination was therefore not shown to have been arbitrary *ab initio.* But the taxpayer urges that since Albert did not testify in the Tax Court as to this matter and since the testimony of Hansell in the Tax Court was to the effect, according to taxpayer, that the taxpayer had not received a finder's fee, the deficiency determination was thereby shown to be arbitrary because it was deprived of the only foundation that the Government claimed for it. First, since Albert did not testify in the Tax Court as to this aspect of the case, it cannot be assumed that the foundation for the Commissioner's determination was destroyed. Furthermore, Hansell testified that he did not think taxpayer received a finder's fee when he got his finder's fee.[2] Certainly such testimony could not justify a finding that the Commissioner's determination was arbitrary.

■ We conclude that the deficiency determination was not arbitrary. Therefore the presumption in favor of the determination continued and the

---

2. "Q. In effect, did you say [in testifying before the S. E. C.] that you heard that Baird and Patrick received a larger fee than you? A. I can't say that because from what I have learned lately, I don't think Mr. Baird received any fee at all when I got my fee."

burden of proof remained with the taxpayer.

The taxpayer argues that the Tax Court in its opinion improperly relied upon a theory of liability not tendered at the trial. Thus, he says that the finder's fee theory was the sole issue at the trial, yet the Tax Court found that the taxpayer received the shares as compensation for various past services and the expectation of future services as well as a finder's fee.

The statutory notice of deficiency ("90-day notice letter") sent to taxpayer by the Commissioner pursuant to Treasury Regulation 301.6212–1 was worded most broadly. It stated that:

"It has been determined that you realized additional taxable income in the amount of $671,625.00 representing the fair market value of 27,000 shares of Bellanca Aircraft Corporation stock transferred to the Winfield Baird Foundation in your behalf. This income was not reported on your return."

We think, that the wording of the deficiency notice was broad enough to include an issue as to income arising from past and future services as well as the finder's fee. But that is not the end of the matter. Prior to the introduction of testimonial evidence in the Tax Court, the Commissioner on a number of occasions indicated that he bottomed his position on the theory that the income in question resulted from a finder's fee arising out of the Bellanca transaction. He so indicated in his 30-day letter, in his trial memorandum, and in his counsel's opening statement[3] to the Tax Court. Indeed, the Tax Court's own statement at the outset of the proceedings made it clear that it understood that the Commissioner's position was based solely on its finder's fee claim.[4] Under these circumstances, we think the taxpayer was reasonably warranted in assuming that at the trial his burden of proof was to show that he received no finder's fee as a result of the Bellanca transaction. Furthermore, from our reading of the transcript we do not think it can fairly be said that the taxpayer was on notice that a broader theory of liability was being pursued. Consequently, the Tax Court was not warranted in evaluating taxpayer's evidence against any other theory of liability. We say this because it would be patently unfair to decide this case on a theory of which taxpayer was unaware and thus did not have an opportunity to meet at the evidentiary stage.

■■■ Did the taxpayer carry his burden of producing evidence that could justify the conclusion that the presumption arising from the Commissioner's deficiency determination was overcome as it related to the finder's fee? When the taxpayer makes an evidentiary showing of "no income" based on competent and relevant credible evidence, Foster v. C. I. R., 391 F.2d 727, 735 (4th Cir. 1968); Banks v. C. I. R., 322 F.2d 530, 537 (8th Cir. 1963), the Commissioner then has the burden of going forward with the evidence. Cory v. C. I. R., 126 F.2d 689 (3rd Cir. 1942). But the court is not bound to accept taxpayer's testimony at face value even when it is uncontradicted if it is improbable, unreasonable or questionable. Banks v. C. I. R., *supra*. This being so, the next issue is whether the Tax Court rejected the taxpayer's testimony on the finder's fee issue and, if so, whether it was entitled

---

3. "It is respondent's [Commissioner's] position that he [taxpayer] performed personal services as a finder which entitled him to a fee on the merger of the Bellanca Aircraft Corporation with L. Albert & Son in Akron, Ohio, a partnership."

4. "As I understand the problem involved in this case is whether a certain payment made by the partnership of L. Albert & Son to the Winfield Baird Foundation should be treated as a charitable contribution by the partnership or should be considered as a constructive payment of a finder's fee to Mr. David G. Baird and constructive charitable contribution by him to the Winfield Baird Foundation."

to do so when tested by the controlling standards.

■ The Tax Court concluded that "In the final analysis, we found petitioner's testimony unconvincing on the ultimate factual determination involved here." A reading of the court's opinion suggests that the "ultimate factual determination" to which it referred appears to have been whether the shares were for past and future services rather than merely a finder's fee. If so, we think the finding was impermissible because of the limitation of the trial to the finder's fee issue. We, of course, do not say that additional theories of liability could not have been tried but we think that it was impermissible for the Tax Court to decide the case on an issue other than that explicitly tendered without reasonable notice to the taxpayer. This is particularly true, where as here, the taxpayer may be able to produce evidence relevant to the broader theory upon which the Tax Court may have decided the case. Compare Little v. C. I. R., *supra*.

■ We conclude that the case must be remanded to the Tax Court to determine the case on the finder's fee theory, if the Commissioner desires to pursue that theory. If the Commissioner desires to pursue any additional theory of liability, his right to do so must be decided in the first instance by the Tax Court.

We note that the parties are in serious disagreement as to whether the Commissioner, presumably if he finds himself with the burden of going forward with the evidence, can only succeed if he establishes the existence of an agreement or understanding between Albert and taxpayer that the income was to be deflected to the Foundation. Compare Treasury Regulation 1.61–2(2).[5] This issue is tendered to us for determination although it appears not to have been developed before the Tax Court. The Tax Court will of course be free to decide this issue if it finds it necessary to do so.

The decision of the Tax Court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

BIGGS, Circuit Judge (dissenting).

In a case, such as the instant case, where the Commissioner has assessed a deficiency on the basis of unreported income, the burden of proof is on the Commissioner to show that the taxpayer received income. This burden is *initially* satisfied by the presumption that the Commissioner's deficiency determination is correct. The burden is thus on the taxpayer to prove the incorrectness of the deficiency determination. This burden is procedural and is met if the taxpayer produces competent and relevant evidence from which it could be found that he did not receive the income alleged in the deficiency notice. Foster v. Commissioner of Internal Revenue, 391 F.2d 727 (4 Cir. 1968); Herbert v. Commissioner of Internal Revenue, 377 F.2d 65 (9 Cir. 1966); Weir v. Commissioner of Internal Revenue, 283 F.2d 675 (6 Cir. 1960).[1] If this burden is met by the taxpayer the burden of proof shifts

---

5. "(c) Payment to charitable, etc., organization on behalf of person rendering services. The value of services is not includible in gross income when such services are rendered directly and gratuitously to an organization described in section 170(c). Where, however, pursuant to an agreement or understanding, services are rendered to a person for the benefit of an organization described in section 170(c) and an amount for such services is paid to such organization by the person to whom the services are rendered, the amount so paid constitutes income to the person performing the services."

1. In *Weir*, petitioner was President and principal stockholder of a number of corporations during the years 1945–49. During these years, numerous checks on the corporation were issued to various persons. The I.R.S. found that these checks were issued for the personal benefit of the petitioner. The petitioner contended that these checks were issued for the benefit of the corporations, and testified that he had received no personal benefit from the issuance of the checks. After the Tax Court found that the checks constituted taxable income to the petitioner, the Court of

back to the Commissioner to prove the existence and amount of the deficiency. In order for the Commissioner to satisfy this burden, he must prove that the amount paid to the foundation was made pursuant to an *agreement or understanding* between the taxpayer and the donor. Treasury Regulation 1.61–2(c).[2]

In this case, the uncontradicted testimony of appellant's witnesses that the transfer by Albert to the Baird Foundation was not in consideration for services performed by Baird in connection with the Bellanca-L. Albert & Sons transaction *or* for past or future services was adequate to overcome the presumption of correctness which attached to the Commissioner's deficiency determination. Thus, this uncontradicted evidence[3] is such competent and relevant evidence from which it could be found that Baird received no income with respect to the transfer from Albert to the Baird Foundation. The burden of proof then shifted to the Commissioner to establish the requisite "agreement or understanding." Since the record is devoid of any evidence showing an "agreement or understanding," I would hold that the Commissioner did not meet its burden.

I conclude that the judgment should be reversed and the case remanded to the Tax Court with instructions to enter judgment for the appellant.

For the reasons stated, I respectfully dissent.

Appeals reversed using the following language at page 679:

"The law imposes much less of a burden upon a taxpayer who is called upon to prove a negative—that he did not receive the income which the Commissioner claims—than it imposes upon a taxpayer who is attempting to sustain a deduction on his income tax return. One reason for this is that * * * deductions are matters of legislative grace, and the burden of proving them and their correct amount rests upon the taxpayers, entirely aside from the consideration of any presumption of correctness that attaches to the Commissioner's determination, and that the application of the same rule to the testimony that a taxpayer did not receive income, as to a taxpayer's claim for deduction on his income tax return, would invert the ordinary rules of procedure, as Judge Learned Hand pointed out in Taylor v. Commissioner [of Internal Revenue], 2 Cir., 70 F.2d 619, 621, affirmed 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623."

The Court further asserts that after the petitioner clearly testified that he never received any personal benefit from the checks issued by the corporations, it was unnecessary for him to testify as to the purpose for which the checks had been issued:

"By his complete denial that he received any benefit from the checks, he overcame whatever presumption arises from the Commissioner's determination; and it is not necessary for him to go further and affirmatively show the purpose for which the checks were actually issued, or to prove the correct amount of the tax due, in order to nullify the Commissioner's statement of deficiency." (Citations omitted). 283 F.2d at 681–682.

2. See note 5 cited to the text in the majority opinion for the text of this regulation.

3. The Commissioner's only witness, Hansell, testified that, to his knowledge, Baird did not receive anything in connection with the Bellanca-L. Albert & Sons deal.