ROBERT C. GRIFFIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Griffin v. Commissioner
Docket No. 21063-89
United States Tax Court
T.C. Memo 1991-283; 1991 Tax Ct. Memo LEXIS 331; 61 T.C.M. (CCH) 2988; T.C.M. (RIA) 91283; June 25, 1991, Filed *331 Decision will be entered for the respondent. Robert C. Griffin, pro se. Edward J. Laubach, for the respondent. RUWE, Judge. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies and additions to tax in petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)(1) [1]
Sec. 6653(b)(2)
Sec. 6661
1985
$ 10,290.00
$ 5,145.00
50 percent of
$ 2,572.50
the interest due
on 10,290.00
Year
Deficiency
Sec. 6653(b)(1)(A)
Sec. 6653(b)(1)(B)
Sec.6661
1986
$ 11,981.00
$ 8,985.75
50 percent of
$ 2,995.25
the interest due
on 11,981.00
The issues for decision are: (1) Whether petitioner received unreported embezzlement income during the taxable years 1985 and 1986 in amounts determined by respondent; [2] (2) *332 whether petitioner is liable for additions to tax for fraud for taxable years 1985 and 1986; and (3) whether petitioner is liable for additions to tax under section 6661 for substantial understatement of income tax liability for taxable years 1985 and 1986. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Washington, Pennsylvania, at the time he filed his petition in this case. Petitioner reported his income and expenses on the cash basis. Petitioner prepared his own income tax returns (Forms 1040EZ) for *333 the taxable years 1985 and 1986. From December 19, 1983, to July 14, 1986, petitioner was employed as a payroll clerk at McAnallen Corporation (McAnallen), a general building contractor, located in Washington, Pennsylvania. Beginning in January 1984, petitioner became responsible for preparing the payroll for all McAnallen employees. Petitioner was the only payroll clerk at McAnallen from January 1, 1985, until July 14, 1986. During this time, petitioner, as payroll clerk, was primarily responsible for preparing McAnallen's payroll and lay-off checks. [3] Petitioner was subject to little supervision as McAnallen's payroll clerk, and his supervisor's approval was not required in order to issue payroll or lay-off checks. The process of preparing McAnallen payroll checks began with petitioner's receipt of employee time cards. Sometimes petitioner prepared these time cards himself based on *334 information which he received over the telephone from remote job sites. On Tuesday of each week, petitioner entered the information from the time cards into the company computer, and the computer generated the Hours Control Report. The Hours Control Report was a specific accounting of work performed by and wages paid to each McAnallen employee. This report included each employee's name, the individual days worked, the hours worked per day, the hourly rate, the gross earnings per day, the total hours per pay period, and the total gross pay per pay period. After the Hours Control Report was generated and checked by him, petitioner would have the payroll checks for all employees generated by the computer and run through an automatic check-signing machine. The payroll checks would then be delivered to the various job sites for distribution on Thursday of each week. If petitioner was on vacation or furloughed, someone else would perform these functions. During 1984, 1985, and 1986, McAnallen also issued "lay-off" payroll checks to employees who were not needed for an entire construction project or were only needed for a few days of work. These employees were entitled to full payment *335 of their accrued wages on their last day of work. Petitioner also prepared these checks. McAnallen job superintendents, or someone authorized by them, provided petitioner with the hours worked, activities, and wages for the employees entitled to lay-off checks. Petitioner would enter this information into the company computer which would calculate the information which was used to prepare lay-off worksheets. Lay-off worksheets reflected lay-off checks, advances, missed hours, vacations, and bonuses paid to McAnallen employees. These worksheets and the attached time sheets were prepared by petitioner during 1985 and 1986. All of the checks which respondent determined that petitioner misappropriated were entered on the lay-off worksheets by petitioner. The lay-off payroll checks which petitioner prepared were signed by a check-signing machine. The check sign-out log reflected checks signed by the check-signing machine. Each entry in the log reflected the initials of the person using the machine. The initials "bg" in the check sign-out log indicate that the entry was made by petitioner. With the exception of five checks which cannot be located in the log, all of the 204 checks *336 which respondent determined that petitioner had misappropriated were entered in the check sign-out log by petitioner. In early 1985, it came to the attention of Charles McAnallen, an officer of McAnallen, that petitioner was endorsing payroll checks made payable to McAnallen field employees and cashing these checks. Mr. McAnallen asked petitioner about this and petitioner explained that field employees who were out of town had asked him to cash these checks. Mr. McAnallen cautioned petitioner that he should not coendorse payroll checks for others. After that time, only one of the checks which respondent determined that petitioner misappropriated was coendorsed by petitioner. It was highly irregular for McAnallen field personnel to ask petitioner to cash their paychecks for them. The misappropriated lay-off checks were issued in the names of McAnallen field personnel. In February 1987, a field employee of McAnallen noted a discrepancy between the income reflected on his Forms W-2 and his personal records. The employee notified McAnallen officials who, in turn, conducted an investigation of all of McAnallen payroll checks issued during 1985 and 1986. Based upon its investigation, *337 McAnallen identified 106 1985 lay-off checks totalling $ 35,550.19 and 98 1986 lay-off checks totalling $ 35,529.77 which it suspected were misappropriated. The checks were issued in the names of actual McAnallen employees but were not issued for actual hours worked by the employees. The payees of these checks were contacted and presented with the cancelled checks. The payees denied endorsing these lay-off checks, receiving any of the proceeds from the checks, or authorizing anyone else to receive the proceeds. Based on this information, McAnallen officials concluded that someone had misappropriated the checks. Petitioner terminated his employment with McAnallen in July of 1986. Prior to terminating his employment, petitioner had worked 40 hours per week during 1985 and 1986 with the exception of the period from September 1985 through March 1986 when he only worked 16 hours per week. During the period that he worked 16-hour weeks, petitioner could select the hours that he worked. No misappropriation of McAnallen payroll or lay-off checks occurred after petitioner terminated his employment with McAnallen. On March 21, 1989, petitioner pled guilty to 14 counts of theft by deception *338 and forgery under 18 PA. CONS. STAT. ANN. secs. 3922 and 4101 (Purdon 1983). Petitioner admitted that he received the proceeds of the following 14 McAnallen checks when he pled guilty. Date
Payee
Amount 12/10/84
S. McNary
$ 462.32
01/10/85
S. McNary
467.25
02/14/85
S. McNary
399.61
03/28/85
S. McNary
490.33
06/14/85
S. McNary
381.52
09/19/85
S. McNary
285.03
06/13/85
M. McNary
298.50
06/19/85
M. McNary
289.41
02/28/86
Ferry
385.86
05/23/86
Ferry
389.33
06/19/86
S. McNary
394.70
07/03/86
S. McNary
391.08
06/05/86
M. McNary
375.32
07/01/86
M. McNary
369.32
Petitioner forged the payees' endorsements on each of these 14 checks. Petitioner recorded all of these checks in both the lay-off worksheets and the check sign-out log. None of the proceeds which petitioner admits he misappropriated were reported as income on his 1985 or 1986 income tax returns. One of the reasons petitioner failed to report these amounts was his fear that it would expose his embezzlement activity. Petitioner used other employees' names on the lay-off checks which he admitted to misappropriating in order to make it more difficult to trace the misappropriation to *339 him. Petitioner did not maintain any records of the funds which he embezzled from McAnallen. Petitioner did not share the proceeds of the misappropriated checks with anyone, and no one assisted him in his misappropriation. Petitioner had a drug and alcohol abuse problem during 1985 and 1986. Petitioner's substance abuse during 1985 and 1986 was expensive and was a factor in his decision to misappropriate McAnallen funds. On his Forms 1040EZ, petitioner reported wages in the amounts of $ 9,550.56 in 1985 and $ 12,296.24 in 1986. Petitioner's Forms W-2 in 1986 reflect that he received $ 5,516.20 from McAnallen and $ 6,780.04 from Louis E. Waller Co., Inc. Petitioner was paid approximately $ 6.00 per hour by McAnallen. In his notice of deficiency, respondent determined that petitioner received unreported embezzlement income in the amounts of $ 35,550.00 and $ 35,530.00 during the taxable years 1985 and 1986, respectively. OPINION The first issue for decision is whether petitioner received unreported embezzlement income for the taxable years 1985 and 1986 in the amounts of $ 35,550 and $ 35,530, respectively. Section 61 defines gross income as "all income from whatever source *340 derived." It is well established that embezzled or stolen funds are includable in income in the year in which they are misappropriated. Sec. 1.61-14(a), Income Tax Regs.; James v. United States, 366 U.S. 213, 219-220, 6 L. Ed. 2d 246, 81 S. Ct. 1052 (1961); Lydon v. Commissioner, 351 F.2d 539 (7th Cir. 1965), affg. a Memorandum Opinion of this Court. Respondent's determination is presumed correct, and petitioner bears the burden of proving otherwise. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Petitioner admits that he received the proceeds from the 14 checks which he pled guilty to stealing from his employer. However, petitioner claims that he did not receive the proceeds from the additional checks which his employer and respondent determined were also misappropriated. Petitioner presented his own testimony to substantiate this claim. We are not bound to accept petitioner's testimony, especially when his testimony is improbable, unreasonable, or questionable. Lovell and Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. per curiam a Memorandum Opinion of this Court; Baird v. Commissioner, 438 F.2d 490, 493 (3rd Cir. 1970); *341 Banks v. Commissioner, 322 F.2d 530, 537 (8th Cir. 1963), affg. a Memorandum Opinion of this Court; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Pascarelli v. Commissioner, 55 T.C. 1082, 1095 (1971), affd. without published opinion 485 F.2d 681 (3rd Cir. 1973). In the instant case, petitioner had the motive (an expensive drug dependency), opportunity (he was primarily responsible for generating the lay-off checks and he was not closely supervised), and predisposition (he pled guilty to misappropriating 14 payroll checks) to misappropriate all of the checks which form the basis of respondent's determination. The evidence clearly establishes that all of the checks which form the basis for respondent's determination were missappropriated by someone. There is no evidence remotely suggesting that anyone other than petitioner misappropriated these funds, and the misappropriation stopped after petitioner terminated his employment with McAnallen. In light of this evidence, we find that petitioner has failed to satisfy his burden of proof, and hold for respondent on this issue. The second issue for decision *342 is whether petitioner is liable for the additions to tax for fraud for the taxable years 1985 and 1986. Respondent bears the burden of proving by clear and convincing evidence that: (1) An underpayment exists for each of the years in issue, and (2) that some portion of each underpayment is due to fraud. Sec. 7454(a); Petzoldt v. Commissioner, 92 T.C. 661, 698-699 (1989); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982); Rule 142(b). To meet this burden, respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Respondent need not prove the precise amount of the underpayment resulting from fraud, but only that some part of the underpayment of tax for each year in issue is attributable to fraud. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this *343 Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Rowlee v. Commissioner, supra at 1123; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never imputed or presumed. It must be established by independent evidence of a fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from proven facts because direct proof of a taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492, 87 L. Ed. 418, 63 S. Ct. 364 (1943); Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may be used to establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). Petitioner admits that he received and failed to report as income proceeds in the amounts of $ 2,611.65 and $ 2,305.61 from misappropriated checks during the taxable years 1985 and 1986, respectively. Thus, respondent has established *344 that an underpayment exists by clear and convincing evidence. The record also clearly and convincingly establishes that petitioner received the other amounts that were misappropriated from McAnallen during 1985 and 1986. Respondent has also proven that some part of the underpayment for each of the years in issue is attributable to fraud. The reason given by petitioner for not reporting the income from the checks that he admitted to misappropriating was that he was afraid that if he reported income other than that reflected on his Forms W-2, it might be traced to its illegal source and he would be caught. This demonstrates that he was aware of his reporting requirement, considered it, and consciously chose to underreport his income and taxes. [4] We have already found that petitioner received all of the funds that were misappropriated from McAnallen during 1985 and 1986 despite his testimony to the contrary. We find that petitioner's failure to report all of the funds misappropriated from McAnallen was due to fraud. *345 The record also contains evidence of the traditional "badges" of fraud. Petitioner failed to maintain any records of the income which he embezzled. Estate of Upshaw v. Commissioner, 416 F.2d 737, 740-741 (7th Cir. 1969), affg. a Memorandum Opinion of this Court; Grosshandler v. Commissioner, 75 T.C. 1, 20 (1980); Otsuki v. Commissioner, 53 T.C. 96, 109 (1969). Petitioner went to great lengths to conceal his embezzling activity. Petitioner falsified lay-off worksheets, forged employees' endorsements on checks which he cashed without their approval, and misled his employer about coendorsing fellow employees' paychecks with the employees' permission. These acts all indicate petitioner's intent to conceal, deceive, and defraud. As this Court has previously stated: "it is a fair inference that a man who will misappropriate another's funds to his own use through misrepresentation and concealment will not hesitate to misrepresent and conceal his receipt of those same funds from the Government with intent to evade tax." McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). *346 We note that for the taxable year 1985, if respondent shows that any part of the underpayment is attributable to fraud, then the taxpayer is liable for an addition to tax equal to 50 percent of the entire underpayment. By contrast, for the taxable year 1986, if respondent shows that any part of the underpayment is attributable to fraud, then a rebuttable presumption attaches that the entire underpayment is due to fraud. A taxpayer may rebut this presumption by presenting evidence which demonstrates that part of the underpayment is not attributable to fraud. H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 781. Petitioner has failed to rebut this presumption. Thus, the entire underpayment, as determined by respondent, is treated as attributable to fraud. The final issue for decision is whether petitioner is liable for the additions to tax under section 6661 for substantial understatement of income tax liability. Section 6661 imposes an addition to tax in an amount equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). The amount *347 of the understatement is equal to the excess of the amount of tax required to be shown on the return for the tax year less the amount of the tax shown on the return. Woods v. Commissioner, 91 T.C. 88, 94 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1). The deficiencies that we uphold for 1985 and 1986 qualify as substantial understatements as defined in section 6661(b). Petitioner has not shown that any of the provisions for reduction of the section 6661 addition to tax contained in section 6661(b)(2)(B) are applicable. Accordingly, we sustain respondent's determination that petitioner is liable for the additions to tax under section 6661. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner stipulated that he received proceeds from checks which he misappropriated from his employer during the taxable years 1985 and 1986 in the amounts of $ 2,611.65 and $ 2,305.61, respectively. Petitioner also stipulated that he received unemployment compensation in the amount of $ 2,968.00 during the taxable year 1986 which was not reported on his 1986 return.↩
3. Lay-off checks were payroll checks which were issued to employees who did not work full time as explained, infra↩, p.4.
4. See Bender v. Commissioner, T.C. Memo 1985-375↩.